IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


GAIL A. N.,[1]                                    No. 3:18-cv-00512-HZ

                    Plaintiff,                    OPINION & ORDER

        v.

COMMISSIONER, Social Security
Administration,

                    Defendant.


HERNÁNDEZ, District Judge:

        Plaintiff brings this action for judicial review of the Commissioner's final decision

denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C.

§ 1382(c)(3)). Because the Administrative Law Judge (ALJ) erred by improperly discounting

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party or parties in this case. Where applicable, this opinion uses the same
designation for non-governmental party's immediate family members.

Plaintiff's subjective symptom testimony, lay witness testimony, and medical opinion evidence, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings.

## BACKGROUND

Plaintiff was born on September 9, 1974 and was thirty-nine years old on June 21, 2014, the alleged disability onset date. Tr. 88.[2] Plaintiff met the insured status requirements of the Social Security Act ("SSA" or "Act") through December 31, 2019. Tr. 80. Plaintiff has at least a high school education and is unable to perform any past relevant work. Tr. 88. Plaintiff claims she is disabled based on conditions including fibromyalgia, depression, anxiety, and migraines. Tr. 241.

Plaintiff's benefits application was denied initially on December 26, 2014, and upon reconsideration on March 2, 2015. Tr. 79. A hearing was held before Administrative Law Judge Rebecca Jones on August 11, 2016. Tr. 96–136. ALJ Jones issued a written decision on February 28, 2017, finding that Plaintiff was not disabled and therefore not entitled to benefits. Tr. 79–90. The Appeals Council declined review, rendering ALJ Jones's decision the Commissioner's final decision. Tr. 1–6.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 11.

At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 80.

At step two, the ALJ determined that Plaintiff had "the following severe impairments: fibromyalgia and migraine headaches." Tr. 80. The ALJ determined that Plaintiff's thyroid

disorder, degenerative disc disease of the thoracic spine, depressive disorder, and anxiety disorder were not severe. Tr. 80-81.

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 82.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work. The ALJ further specified that "[s]he could perform work that does not require climbing ladders, ropes or scaffolds. She [could] perform work that does not require exposure to unprotected heights or hazardous machinery. She [could] perform simple routine tasks defined as no greater than reasoning level 2." Tr. 82.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 88.

At step five, the ALJ relied on the testimony of a vocational expert to find that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Tr. 89. Accordingly, the ALJ concluded that the Plaintiff was not disabled. Tr. 90.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d

1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises four issues on appeal. She argues the ALJ erred by improperly (1) rejecting her subjective symptom testimony; (2) categorizing her anxiety and depression as non-severe; (3) rejecting lay witness testimony; and (4) rejecting medical opinion evidence.

### I.    Plaintiff's Testimony

Plaintiff argues the ALJ improperly discounted her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons" (quotation marks and citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and

convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." (quotation marks and citations omitted)). An ALJ must include specific findings supported by substantial evidence and a clear and convincing explanation for discounting a claimant's subjective symptom testimony.

When evaluating subjective symptom testimony, an ALJ may properly consider several factors, including a plaintiff's "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)*. The ALJ may also consider a plaintiff's ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

Here, the ALJ summarized Plaintiff's testimony as follows:

[Plaintiff] testified she was unable to work because of pain and migraines. She testified she could not sit, stand or walk for long periods. She testified she could not lift much. She testified her pain was caused by too much activity, not getting enough sleep, walking too much, and sitting for periods. She testified she could sit at most an hour. She testified that exercising and physical therapy did not help her pain. She testified her fibromyalgia caused her to be very forgetful and have difficulty focusing. She testified having migraines two to three times a month that last for two to four days. She testified her migraines "started back up" about a year ago. She testified she could walk a block before needing to rest for five to ten minutes. She testified she [] could not lift anything frequently. She testified the most she could lift was ten pounds. She testified her sleep has gotten progressively worse due to her pain. She testified having about "two bad" days a week in which she is resting most of the day. She testified that being around too many people (ten or more people) caused her anxiety. She testified she could not handle being around too many people.

Tr. 83.

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" and did not identify evidence of malingering. Tr. 83. However, the ALJ found that Plaintiff's allegations were not consistent with the record. Tr. 85. Specifically, (1) the alleged symptoms were not supported by objective

medical evidence; (2) Plaintiff failed to follow the recommended treatment (i.e. exercise); (3) "medications/treatment" were relatively effective in controlling Plaintiff's symptoms; (4) Plaintiff's testimony regarding the frequency of her migraines was inconsistent with treatment notes; and (5) Plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 86–87. The ALJ also found that Plaintiff's mental health limitations were inconsistent with the medical evidence. Tr. 86.

### 1. Objective Medical Evidence

An ALJ may consider objective medical evidence in evaluating a plaintiff's subjective symptom testimony, so long as the ALJ does not reject such testimony solely because it is unsubstantiated by the objective medical evidence. 20 C.F.R. § 416.929(c); *Rollins v. Massanari*, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[;] . . . . While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." (internal quotation and brackets omitted)).

Here, the ALJ concluded that

[t]he objective medical evidence does not support the claimant's alleged symptoms of pain and its limiting effects. Dr. Thompson found she was negative for weakness and had full range of motion of all her joints (Ex. 4F). FNP Swanson found she had normal musculoskeletal range of motion, normal strength, no sensory deficit, and normal reflexes (Ex. llF/5-6). Dr. Bitts found she had nontender neck, normal range of motion of the back, and normal strength and tone, reflexes, coordination and gait (Ex. llF/24). Dr. White found she had normal sensory and motor function of the extremities, and no gross ataxia (Ex. SF). Dr. Olson repeatedly found she had normal tone and coordination, normal gait, and intact sensation (Ex. 12F). Dr. Luhrs found she had normal range of motion of the arms and shoulders, grossly symmetrical muscle tone and bulk, and normal

gait (Ex. l lF/40). This evidence is inconsistent with the claimant's allegations of debilitating pain.

Tr. 86.

As noted, Plaintiff testified to chronic and debilitating pain from migraines and fibromyalgia. While the ALJ identified various objective tests with "normal" findings—such as normal range of motion, normal gait, and normal strength and tone—the ALJ did not explain how these normal findings contradict, or even fail to support, Plaintiff's allegations related to fibromyalgia, migraines, or chronic pain.

The Ninth Circuit has addressed this very issue and explained that:

what is unusual about [fibromyalgia] is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. There are no laboratory tests to confirm the diagnosis.

*Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (original alterations, quotation marks, and citations omitted). Thus, like in *Revels*, while Plaintiff may have exhibited "normal muscle strength, tone, and stability, as well as a normal range of motion," these examination results "are perfectly consistent with debilitating fibromyalgia." *Id.* at 666. The ALJ therefore erred in relying on this irrelevant objective medical evidence to discount Plaintiff's subjective symptom testimony.

## 2. Failure to Follow a Recommended Treatment

An "ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina*, 674 F.3d at 1113 (quoting *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). Here, the ALJ suggests that Plaintiff did not follow throughout with the recommended treatment of regular exercise:

Treatment providers have repeatedly counseled her that exercise is an important cornerstone to treatment of her fibromyalgia. The record shows she was walking daily at times (Exs. 11F /21 and 12F/22) but also shows she did not exercise regularly (Ex. 11F/4, 12). Her doctors continued to recommend physical therapy and exercise (Exs. 4F/3; and 11F/7, 25, 32, 37), which suggests that they wanted her to continue to increase her activity level. Of note, treatment providers also noted that physical activity and sleep helped with migraines (Ex. 11F/37).

Tr. 86.

As a preliminary matter, the Court finds the ALJ's reasoning plainly unreasonable in this context. Specifically, the Court notes that the ALJ also used Plaintiff's attempts to exercise to support her conclusion that Plaintiff's testimony was inconsistent with her daily activities. In other words, the ALJ seems to conclude that Plaintiff did not exercise enough (because doctors recommended exercise), but also that Plaintiff exercised too much (because her reported exercise was inconsistent with the severity of her reported symptoms). Such a double standard is contradictory and unreasonable.

Moreover, the Court does not agree with the ALJ's description or interpretation of the medical evidence as a whole. First, the Court does not agree with the ALJ's apparent inference that because Plaintiff's doctors recommended that she *continue* her physical activity, these doctors were, in reality, recommending that Plaintiff *increase* her physical activity. *See* Tr. 485 (doctors recommended that she "continue exercise as tolerated" and "continue physical therapy"). As the Court sees no statement from a doctor that Plaintiff was noncompliant with treatment, the Court finds such speculation without support in the medical record. Rather, the record shows that Plaintiff did, in fact, regularly attempt to exercise. Tr. 469 (walks daily), Tr. 540 (walking daily, planning to start yoga at home), Tr. 516 (reported performing physical therapy exercises); Tr. 514 (reported working to walk ten minutes at a time, three times a day, but was "very limited with walking secondary to pain"). The record also shows that Plaintiff

reported that these attempts were frequently extremely painful. Tr. 113, 452 (Plaintiff "is not exercising daily because when she tries it is so painful she cannot stand it"); Tr. 460 (pain exacerbated by "activity, ie. Housework, walking briskly"); *see also see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noting that an *unexplained* failure to seek or follow a prescribed course of treatment may be a reason for discounting a claimant's testimony). Because the record shows that Plaintiff regularly attempted to, and often succeeded at, following the prescribed course of treatment, and offered valid reasons for when she could not, the ALJ erred in rejecting Plaintiff's subjective symptom testimony on these grounds.

### 3. Effective Treatment

An ALJ may also consider whether treatment effectively controls a plaintiff's condition. *Orteza*, 50 F.3d at 750; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling" (citations omitted)); *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (plaintiff's physical ailments were adequately treated with over-the-counter pain medication). Here, the ALJ concluded that medication and other treatments were relatively effective in controlling Plaintiff's migraines and fibromyalgia.

With regard to migraines, the ALJ cited reports that Plaintiff's migraines were either somewhat improved or relatively well controlled. *See* Tr. 409, 483, 524. However, the longitudinal record demonstrates that even when "relatively" well controlled, Plaintiff's migraines were frequent and debilitating. *See* Tr. 540 (three migraines in March 2016), Tr. 16 ("migraines every other week recently"), Tr. 310 (record from 2015 noted that "[w]as having daily migraines last month"). Even on Relpax, Plaintiff testified she was still "down" for a few

days following each migraine. Tr. 115. Indeed, the record suggests that although medication may have lessened the intensity of Plaintiff's migraines, it did not lessen their frequency. Tr. 530.

Similarly, the medical records do not support the ALJ's conclusion that gabapentin and acupuncture effectively treated Plaintiff's fibromyalgia symptoms. For example, the ALJ wrote that "a treating doctor noted that gabapentin was helpful for her fibromyalgia (Ex. 12/F28)." Tr. 87. In reality, the doctor noted that "Gabapentin helps some" but "[p]ain is constant," at its worst in the late afternoon and evening, and that Plaintiff's fibromyalgia generally was "poorly controlled at this point." Tr. 546. And, as pointed out by Plaintiff, other records suggest that even on gabapentin "[p]atient state[d] that her pain is at a 7-8/10 on a daily basis." Tr. 452; *see also* Tr. 365. Because the ALJ's conclusion of "effective treatment" is not supported by substantial evidence, the ALJ erred in using it to discount Plaintiff's subjective symptom testimony.

### 4. Inconsistent Testimony

An ALJ may rely on inconsistent testimony when assessing a plaintiff's subjective symptom testimony. *Molina*, 674 F.3d at 1112. Here, the ALJ found that Plaintiff's hearing testimony regarding the frequency of her migraines was inconsistent with treatment notes in the record. Tr. 86. Specifically, the ALJ wrote that while Plaintiff "testified having migraines two to three times a month that last for two to four days . . . treatment notes reflect that she reported that [] sometimes she did not have a migraine for more than one month." Tr. 86. The ALJ cited a single record from November 2014, where Plaintiff reported sometimes going "more than a month with no migraine but sometimes needing 3 Relpax within the same week." Tr. 397. While Plaintiff seems to argue that "3 Relpax" means three migraines, she provides the Court with no support for this argument. Regardless, the Court fails to see how this single report contradicts Plaintiff's testimony. Not only was Plaintiff asked about the frequency of her migraines *at the*

*time of the hearing* ("how often are you having migraines *now*?"), but, as noted by the ALJ earlier, Plaintiff testified that while her migraines were well controlled for a period of time (including during 2014), her migraines "started back up" about a year earlier (i.e. during August 2015), *after* the date of the cited record. *See* Tr. 115. While the Commissioner directs the Court to a record purporting to show that Plaintiff, at one doctor's visit, reported only two migraines over a seven-week period, the medical record at large suggests that these migraines occurred, on average, with much greater frequency. *See* Tr. 540 (three migraines in March 2016), Tr. 16 ("migraines every other week recently"), Tr. 310 ("daily migraines last month"). In sum, the records reflect that, while the frequency of Plaintiff's migraines fluctuated at times, Plaintiff's response to the question "how often are you having migraines *now*?" Tr. 114 (emphasis added), was, in fact, consistent with her response to a medical provider that same month, Tr. 61 ("Has been having 2-3 migraines a month.").

Thus, the ALJ erred in relying on "inconsistent testimony" to discount Plaintiff's subjective symptom testimony.

### 5. Daily Activities

An ALJ may discount a plaintiff's testimony when it is inconsistent with her daily activities. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). As explained in *Orn*, there are "two grounds for using daily activities to form the basis of an adverse credibility determination:" where the activities contradict a plaintiff's own testimony, or where they meet the threshold of transferable work skills. *Id.*

Here, the ALJ described Plaintiff's testimony as follows:

She reported she was able to perform her activities of daily living independently (Ex. 11F/12). She reported preparing meals (Ex. 6E). She reported performing household chores such as light cleaning, dishwashing, laundry and dusting (Id). She reported going outside daily (Id). She reported she was able to drive (Id). She reported she was able to

> go outside alone (Id). She reported shopping in stores weekly (Id). She reported her
> hobbies included gardening, walking, hiking, traveling and reading (Id).

Tr. 87.

> The ALJ went on to note that:

> In August of 2014, she reported she had been traveling to Seattle once a week from
> Oregon to help her dad who had undergone surgery for lung cancer (Ex. 5F/I). In March
> of 2015, she reported she had joined a gym and had an appointment with a trainer the
> next day (Ex 11F/9). In April of 2015, she reported she exercised by walking daily (walks
> a circuit in the neighborhood three times a day) (Ex. 11F/21). In May of 2015, she
> reported she continued to walk regularly (Ex. 13F/35). In June of 2015, she reported she
> went to a lake over the weekend with her family (Ex. 13F/41). In May of 2016, she
> reported she exercised by walking, stretching and household chores (Ex. 10F/21). In June
> of 2016, she reported working out in her yard (Ex. 10F/I). At the hearing, she testified she
> went to a family reunion in the Tri-Cities in July of 2016.

*Id.* The ALJ then concluded that "[t]hese activities [we]re inconsistent with the severity of

symptoms reported." *Id.*

First, there is no evidence to suggest that Plaintiff's activities—including "going outside

alone" or "shopping weekly"—are "'transferable' to a work setting." *See Orn*, 495 F.3d at 639.

There is also no "proof that [Plaintiff] spent a 'substantial' part of her day engaged in

transferable skills." *Id.* ("The ALJ must make 'specific findings relating to [the daily] activities'

and their transferability to conclude that a claimant's daily activities warrant an adverse

credibility determination."). "[D]isability claimants should not be penalized for attempting to

lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

1998).

Second, the Court does not see how these cited activities contradict Plaintiff's own

testimony. Regarding Plaintiff's attempts to exercise, the Court again notes that the ALJ took the

contradictory position that Plaintiff exercised both too much and too little. *See supra* section I.2.

Moreover, the exercise identified by the ALJ is, again, the very treatment prescribed by

Plaintiff's physicians. And, the cited examples do not suggest that Plaintiff was exercising in ways that might *actually* contradict her testimony—by for example, describing exercise of an intensity or duration that could contradict Plaintiff's subjective symptom testimony.

Much of the remaining testimony is mischaracterized or taken out of context. For example, the ALJ noted that Plaintiff "reported her hobbies included gardening, walking, hiking, traveling and reading." Tr. 87, 275. However, Plaintiff also clarified—in the same report—that since she became disabled, she only reads once in a while, walks some ("not as much" any more), and "[d]ue to the pain, [she could] no longer garden, hike, or travel." *Id.* While Plaintiff reported attending a family reunion in the Tri-Cities in July of 2016, she also testified that it was a difficult three-hour drive, and she needed to stop every hour to walk, stretch, and move around. Tr. 106.[3] Plaintiff also qualified her statements by noting she can only do "light" cleaning, "small" amounts of dishes, "small" loads of laundry, and "very light" dusting. Tr. 274.

Finally, even ignoring these missing—and relevant—qualifiers and explanations, the ALJ still failed to explain how Plaintiff's testimony was inconsistent with her allegations. While the ALJ noted that Plaintiff can go outside daily by herself, drive, shop weekly, and perform household chores such as (light) cleaning, (small) loads of laundry, and (light) dusting, the ALJ did not explain how these activities are inconsistent with Plaintiff's allegations. Thus, in sum, the

---

[3] The ALJ also noted that Plaintiff "reported [in 2014 that] she had been traveling to Seattle once a week from Oregon to help her dad who had undergone surgery for lung cancer." Tr. 87. While Plaintiff now argues the visit was a "one-time activity during his death," Pl.'s Br. 23, Plaintiff's citation to her hearing testimony does not support this contention. Rather, during that hearing, Plaintiff was asked by the ALJ about the trips and responded only that "my husband took me up to Seattle and I actually had to stay up in Seattle. My dad had surgery, so I was in the VA hospital with him." Tr. 107. The ALJ did not ask any follow up questions. Thus, the record is ambiguous as to whether this trip(s) was a one-time occurrence or a weekly activity. However, even if the ALJ's interpretation of the record is reasonable—and Plaintiff did visit her father weekly in 2014, this single reason is not sufficient, in light of the record as a whole, to uphold the ALJ's decision on this issue. *See Burrell v. Colvin*, 775 F.3d 1133 (9th Cir. 2014) (finding "one weak reason is insufficient to meet the specific, clear and convincing standard on this record" (citation and internal quotation marks omitted)).

ALJ erred by relying on Plaintiff's activities of daily living to discount her subjective symptom testimony.

**6. Mental Health Impairments**

The ALJ found that Plaintiff's reported mental health impairments were inconsistent with the medical evidence. Tr. 86. Specifically, the ALJ noted that treating psychologists categorized Plaintiff's anxiety as relatively manageable, and while Plaintiff's symptoms were exacerbated by situational stressors (as opposed to any "clinical worsening"), they also improved with medication. Tr. 86.

Plaintiff argues the ALJ (1) ignored her depression, the "most disabling of her conditions," and (2) erroneously focused on her decision not to pursue mental healthcare, which was based on changes to her insurance. Pl.'s Br. 23. The Court does not find these arguments persuasive. Plaintiff testified that while "I do have some depression, [] the anxiety is the harder one to deal with for me." Tr. 116. With regard to insurance, Plaintiff does not assert she lost her insurance, only that it changed. Tr. 117, 103–04.

Moreover, while Plaintiff points to one record where Plaintiff scored "severe anxiety" on the GAD-7 scale, Tr. 473, the ALJ cited records that support the opposite conclusion, *see* Tr. 589 ("anxiety appears relatively manageable), Tr. 597 (negative for anxiety). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez,* 572 F.3d at 591. Thus, the ALJ did not err in rejecting Plaintiff's testimony regarding her mental health impairments. However, because the ALJ's other reasons—discussed above—are not supported by substantial evidence, the ALJ committed reversible error in discrediting Plaintiff's subjective symptom testimony.

## II.     Severe Impairments

Plaintiff argues the ALJ erred at step two by failing to categorize her anxiety disorder and major depressive disorder as severe or non-severe impairments that affected her RFC. Pl.'s Br. at 25. The ALJ considers the severity of the claimant's impairment(s) at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe, medically determinable physical or mental impairment that meets the duration requirement, or a combination of impairments that is severe and meets the duration requirement, the claimant is not disabled. *Id.*

The Ninth Circuit has explained that the severity determination at step two is expressed "in terms of what is 'not severe.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting, and mental functions such as understanding, carrying out, and remembering simple instructions. 20 C.F.R. §§ 404.1522(b), 416.922(b). In Social Security Ruling ("SSR") 85-28, the Commissioner explained that "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities." 1985 WL 56856, at *3, (Jan. 1, 1985) (quoting 20 C.F.R. 404.1521(a) and 416.921(a)); *see also* SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996) ("[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. at 153–54). "[T]he severity

regulation is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." SSR 85-28, 1985 WL 56856, at *2, (Jan. 1, 1985) (internal quotation omitted). "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017). When determining the claimant's RFC, the ALJ must consider "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (citation omitted). "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* Therefore, where the ALJ fails to list a medically determinable impairment at step two, but nonetheless considers the limitations posed by the impairment in the RFC, any error at step two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ concluded that Plaintiff's medically determinable mental impairments included depressive disorder and anxiety. Tr. 81. However, the ALJ found that these impairments caused no more than minimal limitation in Plaintiff's ability to perform basic work activities, based on the "paragraph B" criteria. Tr. 81. While Plaintiff highlights certain records purporting to show more significant limitations, the ALJ explicitly considered—but did not credit—these limitations at step 4 of the analysis. For example, the ALJ found that Plaintiff's "allegations of significant limitations related to her mental health impairments are inconsistent with the medical evidence," noting that "[a] treating psychologist noted her anxiety appeared relatively manageable," Plaintiff reported "improvement in her mental health symptoms with medication," and "the record shows she did not follow through on counseling." Tr. 86. Thus, even if the ALJ failed to categorize Plaintiff's anxiety disorder and major depressive disorder as

severe, because the ALJ considered (even if she did not ultimately adopt) these limitations in constructing the RFC, any error was harmless.

### III.    Lay Witness Testimony

Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account. *Molina, 674 F.3d at 1114*; *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."). Lay witness testimony cannot be disregarded without comment, and the ALJ must give germane reasons for discounting such testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Germane reasons must be specific, *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1053), and may include, for example, conflicts with medical evidence and inconsistent daily activities, *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

Here, Plaintiff argues the ALJ improperly rejected Plaintiff's husband's testimony. The ALJ wrote only that:

> His statements support the claimant's allegations, having witnessed her in her day-today life, but do not establish that the claimant is disabled. Although the statements are generally credible as to his observations, they are inconsistent with the medical evidence of record, which does not fully support the claimant's allegations, and are inconsistent with the claimant's reported level of activity throughout the record.

Tr. 88.

While, as a general matter, an ALJ may discount lay testimony when it conflicts with the medical evidence or plaintiff's daily activities, the record here does not support this conclusion. As noted above, the ALJ erred in relying on inconsistent medical evidence and Plaintiff's activities of daily living to reject Plaintiff's subjective treatment testimony. Because the ALJ

provides no additional support, the Court assumes the ALJ intended to rely on the same records here. Thus, because the ALJ erred in relying on these reasons to reject Plaintiff's subjective symptom testimony, the ALJ similarly erred in relying on them to reject the lay witness testimony.

### IV.    Medical Opinion Evidence

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Rambousek, a treating physician. Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant.  *Id.*; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).  More weight is also given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn*, 495 F.3d at 631. If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61.

Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record.  *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, the parties agree that Dr. Rambousek's opinion was contradicted by the opinion of state agency and non-examining physicians. Pl.'s Reply 11; Def.'s

Resp. 17. Thus, to reject Dr. Rambousek's opinion, the ALJ was required to provide "specific and legitimate" reasons, supported by substantial evidence in the record, for doing so. *See Revels v. Berryhill*, 874 F.3d 648, 662–63 (9th Cir. 2017) (because a treating physician's opinion was contradicted by findings of non-examining state agency doctors, "the ALJ was required to provide specific and legitimate reasons supported by substantial evidence.").

Dr. Rambousek opined, in relevant part, that Plaintiff was severely limited in her "functional capacity and was incapable of minimal (sedentary) activity, and was unable to engage in stress situations or engage in interpersonal relations (marked limitation)." Tr. 87. He also opined that Plaintiff "could not lift, push, pull, bend, stoop, and stand, sit or walk for prolonged periods." Tr. 87.

The ALJ gave these opinions "little weight" because they were "inconsistent with the record as whole" and with Plaintiff's "demonstrated functioning." Tr. 87. The ALJ also wrote that "the medical evidence shows that once she began treating her conditions, she experienced improvement that also improved her functioning. Of note, at the hearing, the claimant testified she was denied both short and long-term disability." Tr. 87.

The ALJ erred by rleying on the fact that Plaintiff was denied both short and long-term disability payments; Plaintiff testified her claim was denied as a pre-existing condition. *See* Tr. 127. The ALJ also erred in relying on "evidence of improvement;" as discussed in depth above, the record as a whole does not support the ALJ's position that Plaintiff's migraines and fibromyalgia were sufficiently improved.  Similarly, the Court found the ALJ erred by relying on Plaintiff's activities of daily living, i.e. Plaintiff's "demonstrated functioning." Without these reasons, the ALJ's conclusion depends solely on the rationale that Dr. Rambousek's opinion is "inconsistent with the record as a whole." Such a broad and conclusory statement does not

constitute a "specific and legitimate" reason sufficient to uphold the ALJ's conclusion. The ALJ therefore erred in rejecting Dr. Rambousek's opinion.

## V.    RFC

Lastly, Plaintiff argues the RFC is contrary to law because it is not based upon all evidence, as required by SSR 96-8. To the extent Plaintiff raises the same issues addressed above, the Court will not review them again here. To the extent Plaintiff raises new issues, the Court finds them too cursory and undeveloped to merit review. *See Carmickle*, 533 F.3d at 1161 n.2; *Knibbs v. Berryhill*, 731 F. App'x 684, 685 (9th Cir. 2018).

## VI.    Remand for Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (9th Cir. 2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

Plaintiff argues that remand for an award of benefits is appropriate. This case, however, is not one with "rare circumstances" justifying that type of remand. For example, it is unclear to the Court whether Plaintiff did, in fact, drive to Seattle weekly to care for her father during 2014. *See* Tr. 107. Additionally, while Dr. Rambousek ultimately opined that Plaintiff was incapable of even minimal activity, his records also reflect discussions with Plaintiff that contemplated Plaintiff's eventual return to work. Tr. 363. He recommended that once Plaintiff was back on her feet, she should look for a lower stress job with fewer physical demands. Tr. 363. According to the ALJ, this "suggests that the doctor did not see the claimant being disabled for the long term, but rather that she needed a relatively short window to get her pain and depression under control to be able to work at a less demanding job." Tr. 87. Thus, while the ALJ's decision includes reversible error, the record is not fully developed and further proceedings are required. The Court therefore declines to remand this case for the payment of benefits.

## CONCLUSION

The decision of the Commissioner is reversed and remanded for further administrative proceedings.

IT IS SO ORDERED.

Dated this 25 day of ___July___, 2019.

MARCO A. HERNÁNDEZ
United States District Judge